FILED
IN CLERK'S OFFICE
US DISTRICT COURT EDNY

★ SEP 19 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────X

RICHARD CUMMINGS,

    Plaintiff,

-against-

CONSUMER BUDGET COUNSELING, INC.,

    Defendant.
─────────────────────────────X

**OPINION & ORDER**
CV-11-3989(SJF)(ETB)

FEUERSTEIN, J.

On August 17, 2011, Richard Cummings ("plaintiff") commenced this action against defendant Consumer Budget Counseling, Inc. ("defendant"), pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), alleging that defendant was negligent "in its efforts to consolidate Plaintiff's credit card accounts and make payment on Plaintiff's behalf." (Compl., ¶ 24). Defendant now moves pursuant to the Federal Arbitration Act ("the Act"), 9 U.S.C. §§ 1, *et seq.*, to stay this action pending arbitration. For the reasons set forth herein, defendant's motion is granted.

I.    BACKGROUND

    A.    Factual Background[1]

In late December 2009, plaintiff contacted Advance Step Solutions ("Advance"), which he alleges is an agent of defendant, (Compl., ¶¶ 3, 8), about the possibility of consolidating his credit card debt and lowering the interest he was paying on that debt. (Compl., ¶ 5). At that time,

───────────────

[1] The factual allegations in the complaint, though disputed by defendants, are accepted to be true for purposes of this motion only and do not constitute findings of fact by this court.

1

plaintiff had three (3) credit card accounts with Bank of America (the "BofA accounts") and one (1) credit card account each with Citibank ("the Citibank account") and American Express ("the AmEx account"). (Compl., ¶ 6).

On January 5, 2010, plaintiff entered into a Debt Management Program ("DMP") agreement with defendant, pursuant to which, *inter alia*, defendant agreed to "negotiate with creditors to establish a repayment plan," the acceptance of which was "at the sole discretion of the creditors;" plaintiff agreed to "deposit a specified sum into [defendant's] Trust Account on a monthly basis;" and defendant agreed to make timely disbursements to plaintiff's creditors from the Trust Account. (Declaration of Paul Principato ["Principato Decl."], Ex. A). Pursuant to Paragraph 10 of the DMP agreement, the parties agreed: (1) that "[i]n the event of a dispute between the parties to th[e] agreement, said dispute shall be submitted to mediation and resolved in accordance with the laws of the State of Florida," (Principato Decl., Ex. A); and (2) "to abide by the decision of the mediator." (Id.)

Plaintiff alleges that by letter dated February 3, 2012, defendant informed him that it had sent repayment proposals to each of his creditors for approval; that his initial payment under the DMP agreement would be two hundred eighty dollars ($280.00); and that his subsequent monthly payments under the DMP agreement would be two hundred thirty-one dollars ($231.00). (Compl., ¶ 12).

According to plaintiff, by letter dated February 8, 2010, American Express informed him that it could not consider defendant's repayment proposal because it "does not accept [DMP] proposals from [defendant]," (Compl., ¶ 14), and at that time he had already ceased making payments to American Express at defendant's instruction. (Compl., ¶ 15). In March 2012,

American Express canceled plaintiff's AmEx account on the basis that it was past due. (Compl., ¶ 16).

Plaintiff alleges that Bank of America required that an application be submitted for each of his BofA accounts before it accepted the payment plan proposed by defendant; that defendant "mistakenly" submitted an application for only two (2) of his three (3) BofA accounts; that as a result, Bank of America rejected the applications and twice deemed plaintiff's payments on each of the three (3) BofA accounts to be late; and that Bank of America reported the late payments to a credit agency, adversely affecting plaintiff's credit score. (Compl., ¶¶ 18, 19). According to plaintiff, in late February 2010, he received a letter from JP Morgan Chase informing him that his home equity line of credit had been suspended "because of damaging information in his credit report." (Compl., ¶ 20). Plaintiff alleges that after he informed defendant of its mistake relating to the BofA accounts, he received a letter from defendant, dated March 8, 2010, admitting that its error had been "through no fault of [plaintiff]." (Compl., ¶ 21).

Plaintiff alleges that pursuant to the DMP agreement, he authorized defendant to make a monthly withdrawal of two hundred thirty-one dollars ($231.00) from his bank account at Chase bank, but that on February 1, 2010 and March 1, 2012, defendant withdrew four hundred twenty-nine dollars ($429.00) from that account, and between April 1, 2010 and December 31, 2010, defendant made monthly withdrawals of two hundred forty-seven dollars ($247.00) from that account. (Compl., ¶¶ 10, 13, 17, 22).

B. Procedural History

On August 17, 2011, plaintiff commenced this action against defendant, pursuant to this

Court's diversity jurisdiction under 28 U.S.C. § 1332(a), alleging that defendant was negligent "in its efforts to consolidate Plaintiff's credit card accounts and make payment on Plaintiff's behalf." (Compl., ¶ 24). Defendant now moves pursuant to 9 U.S.C. § 3 to stay this action pending arbitration.

II.   DISCUSSION

"[A]rbitration is a matter of contract," Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010), and, as such, courts are required to enforce agreements to arbitrate "according to their terms." Id.; see also AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745-46, 1748, 179 L. Ed. 2d 742 (2011).

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, is the substantive law applicable to any arbitration agreement within the coverage of the Act, see Vaden v. Discover Bank, 556 U.S. 49, 59, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009); Security Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 325 (2d Cir. 2004) (quotations and citation omitted), and "was designed to promote arbitration." Concepcion, 131 S. Ct. at 1749; see also McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 830 (2d Cir. 1988) (holding that the Act "reflects a congressional recognition of the desirability of arbitration as an alternative to the complications of litigation." (quotations, alterations and citations omitted)). The Act "requires courts to enforce the bargain of the parties to arbitrate * * * [and] reflects an emphatic federal policy in favor of arbitral dispute resolution." Marmet Health Care Center, Inc. v. Brown, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012) (quotations and citations omitted); see also KPMG LLP v. Cocchi, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011). Any doubts concerning "the scope of arbitrable issues"

4

should be resolved "in favor of arbitration." Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) (quotations and citations omitted); see also AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).

9 U.S.C. § 2 provides, in relevant part, as follows:

> "A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Thus, any arbitration agreement affecting interstate commerce is subject to the Act. Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998).

The only issue presented on this motion is whether the parties agreed to arbitrate their disputes under the DMP agreement. Plaintiff's contention that the parties did not agree to arbitrate their disputes under the DMP agreement because Paragraph 10 thereunder requires only that the parties mediate, as opposed to arbitrate, their disputes is without merit. Although the Act does not define "arbitration," the Second Circuit, and most other courts that have decided this issue, have held that agreements that "manifest[] an intention by the parties to submit certain disputes to a specified third party for binding resolution," McDonnell Douglas, 858 F.2d at 830, constitute "arbitration agreements" within the meaning of the Act, notwithstanding the nomenclature used by the parties to the agreement. See id. ("It is * * * irrelevant that the contract language in question does not employ the word 'arbitration' as such. Rather, what is important is that the parties clearly intended to submit some disputes to their chosen instrument for the definitive settlement of certain grievances under the Agreement. * * * Similarly, it is not dispositive that the Agreements fail to term the independent [third party's] conclusions 'final' or 'binding' [so long as] the parties' intent

5

in that regard [is] clear from the language of their contract." (quotations, alterations and citations omitted)); see also Advanced Bodycare Solutions, LLC v. Thione International, Inc., 524 F.3d 1235, 1239 (11th Cir. 2008); Salt Lake Tribune Publishing Co., LLC v. Management Planning, Inc., 390 F.3d 684, 689-90 (10th Cir. 2004); Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 7 (1st Cir. 2004); Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 350-51 (3d Cir. 1997); Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135, No. 10-CV-1455, 2011 WL 4529668, at * 6 (E.D.N.Y. Sept. 27, 2011); AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985).

By agreeing to "abide by the decision of the mediator" under Paragraph 10 of the DMP agreement, the parties manifested an intent to submit any disputes arising thereunder to "a specified third party for binding resolution." McDonnell Douglas, 858 F.2d at 830. Moreover, the DMP agreement provides for an "award," in the form of a "decision of the mediator" declaring the parties' rights, which may be confirmed in accordance with the procedures set forth in the Act. Cf. Advanced Bodycare, 524 F.3d at 1240 (finding that an agreement requiring "mediation or non-binging arbitration" did not fall within the Act's scope because "[m]ediation, as that term is commonly understood, is a method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution * * * or a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute * * *. [It] does not resolve a dispute, it merely helps the parties do so. In contrast, the [Act] presumes that the arbitration process itself will produce a resolution independent of the parties' acquiescence- an award which declares the parties' rights and which may be confirmed with the force of a judgment. That a typical mediation

produces no award is highly probative evidence that an agreement to mediate a dispute is not 'an agreement to settle by arbitration a controversy.' 9 U.S.C. § 2. Parties to a mediation contract have not agreed to submit a dispute for decision by a third party * * * because the third party makes no decision. (quotations and citations omitted))[2]. Since the binding mediation clause in Paragraph 10 of the DMP agreement "manifests the parties' intent to provide an alternative method to 'settle' controversies arising [there]under * * *," CB Richard Ellis, Inc. v. American Environmental Waste Management, No. 98-cv-4183, 1998 WL 903495, at * 2 (E.D.N.Y. Dec. 4, 1998), it constitutes an agreement to "settle by arbitration" within the meaning of the Act.

9 U.S.C. § 3, provides, in relevant part, as follows:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement * * *."

(emphasis added). Thus, the Act "requires a federal court to enforce arbitration agreements and to stay litigation that contravenes them * * * [and] affords no latitude for discretion." Burns v. New York Life Ins. Co., 202 F.3d 616, 620 (2d Cir. 2000); see also WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997); McDonnell Douglas, 858 F.2d at 830. Accordingly, defendant's motion is granted and this litigation is hereby stayed pending a final decision of a mediator in accordance with Paragraph 10 of the DMP agreement. This action shall be administratively closed,

---

[2] The Eleventh Circuit recognized, however, that "if an agreement specifies in detail a dispute resolution procedure which it calls 'mediation' (or anything else) but which is, in substance, * * * 'arbitration' [within the meaning of the Act], substance controls over title." Advanced Bodycare, 524 F.3d at 1240 n. 4.

7

with leave to reopen on ten (10) days notice **within thirty (30) days after a final decision is rendered by a mediator pursuant to Paragraph 10 of the parties' DMP agreement**. A failure to move to reopen this proceeding within thirty (30) days after a final decision is rendered by a mediator shall result in this action being dismissed in its entirety with prejudice.

III.  CONCLUSION

For the reasons set forth above, defendant's motion is granted and this litigation is stayed pending a final decision of a mediator in accordance with Paragraph 10 of the DMP agreement. The Clerk of the Court shall administratively close this action, with leave to reopen on ten (10) days notice within thirty (30) days after a final decision is rendered by a mediator pursuant to Paragraph 10 of the parties' DMP agreement. A failure to move to reopen this proceeding within thirty (30) days after a final decision is rendered by a mediator shall result in this action being dismissed in its entirety with prejudice.

SO ORDERED.

s/ Sandra J. Feuerstein

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 19, 2012
Central Islip, New York